UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEENE, INC., et al., | ) | CASE NO.: 1:24-cv-1877 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES GYPSUM CO., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant United States Gypsum Co.'s Motion to Dismiss or, in the Alternative, to Transfer. (Doc. 14.) Plaintiffs Keene, Inc. and Keene Building Products Co. responded (Doc. 18), and Defendant replied (Doc. 19). For the reasons stated herein, Defendant's Motion to Transfer is GRANTED. Accordingly, the Court TRANSFERS this case under 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Illinois.

**I.      FACTS**

United States Gypsum Co. ("USG" or "Defendant") manufactures and sells gypsum underlayment and noise control sound mats used in building construction. (Doc. 1 at ¶¶ 1, 19.) USG is a Delaware corporation with its principal place of business in Chicago. (*Id.* at ¶¶ 1, 8.)

Keene, Inc. ("Keene") and Keene Building Products Co. ("KBP") (collectively, "Plaintiffs") are affiliated companies owned by Jim Keene. (*Id.* at ¶¶ 1, 26.) Plaintiffs make and sell building construction materials. (*Id.* at ¶¶ 12, 13) Keene is the parent company of KBP and another affiliated company, Dependable, LLC ("Dependable") (collectively, the "Keene Companies"). (*Id.* at ¶¶ 1, 6, 7.) The Keene Companies are based in Cleveland, Ohio. (*Id.*) KBP makes and sells a Quiet Qurl® noise control mat, which is a sound control mat that limits the impact of noise between floors in multi-story buildings. (*Id.* at ¶¶ 3, 12.) Dependable sells a gypsum-cement underlayment, GSL® K2.6. (*Id.* at ¶¶ 3, 13.) The Quiet Qurl® mat and GSL®

K2.6 are almost always sold together.  (*Id.* at ¶¶ 3, 13, 15.)  They are typically applied on top of concrete slabs to improve flooring strength and contribute to soundproofing and fire safety.  (*Id.*)

In 2019, Dependable and USG began discussing an agreement to have USG manufacture gypsum underlayment for Dependable.  (*Id.* at ¶ 25; Doc. 14 at 75.)[1]  On September 18, 2020, USG and Dependable executed a Private Label Agreement ("PLA"), pursuant to which USG was to manufacture GSL® K2.6 for Dependable under Dependable's label.  (Doc. 1 at ¶¶ 26-29; Doc. 14 at 75; Doc. 14-1 at 94.)  There were alleged performance issues under the PLA.  (Doc. 1 at ¶ 32; Doc. 14-2 at 117.)  On November 1, 2021, the parties terminated the PLA and entered into revised terms under a Settlement Agreement.  (Doc. 1 at ¶ 38; Doc. 14 at 75; Doc. 14-2.)

On January 17, 2022, USG filed a lawsuit against Dependable in the United States District Court for the Northern District of Illinois for failure to pay amounts allegedly owed to USG under the parties' agreements.  (*See United States Gypsum Co. v. Dependable, LLC*, Case No. 22-cv-00268, the "Illinois Action," Doc. 1.)[2]  Dependable initially moved to dismiss for lack of personal jurisdiction, which the court denied.  (Illinois Action, Doc. 39.)  Dependable counterclaimed against USG, alleging USG fraudulently induced Dependable to enter into the PLA to harm Dependable's market reputation, and USG delivered untimely and defective product.  (Illinois Action, Doc. 44.)  On October 25, 2024, based on documents produced in discovery, USG sought leave to amend its complaint to add KBP as a defendant.  (Illinois Action, Docs. 136, 141.)  On November 22, 2024, USG filed its amended complaint, adding

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

[2] *See Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004) (courts may take judicial notice of proceedings in other courts of record) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

KBP as a party.  (Illinois Action, Doc. 167.)  On December 18, 2024, KBP filed a motion to dismiss the amended complaint for lack of personal jurisdiction, which is still pending.  (Illinois Action, Docs. 193, 194.)

On October 28, 2024, Keene and KBP filed this action against USG.  (*See* Doc. 1.)  This was after USG sought leave to amend its complaint in the Illinois Action but before USG filed its amended complaint.  In this action, Keene and KBP allege USG fraudulently induced Dependable into a business arrangement and purposely supplied Dependable with defective product, which was part of USG's scheme to harm Keene's and KBP's business.  (*Id.*)  Keene and KBP bring two claims against USG under Ohio law: Intentional Interference with Prospective Business Relationships; and Common Law Unfair Competition.  (*Id.* at ¶¶ 48-56.)

On December 18, 2024, USG moved to dismiss this action under Rule 12(b)(6), asserting it is barred by the statute of limitations, Plaintiffs' claims were released under the binding terms of the Settlement Agreement, and it should be dismissed under the first-to-file rule because it is duplicative of the Illinois Action.  (Doc. 14 at 68, 82-87.)  In the alternative, USG asserts this action should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).  (*Id.* at 68, 87-92.)  Keene and Keene Building Products Co. responded (Doc. 18), and USG replied (Doc. 19).  Because the Court finds a transfer is appropriate under § 1404(a), the Court's analysis begins and ends there.

## II. LAW AND ANALYSIS

### A. Standard of Review

Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  The latter phrase refers to "the federal laws delimiting the districts in which such an action 'may be brought.'"  *Atl. Marine Const. Co.*

*v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 57 (2013) (citations omitted). On a § 1404(a) motion (or a *forum non conveniens* motion), a court "must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 62-63 (citing § 1404(a)). The district court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "The burden is on the defendant as the moving party to establish that there should be a change of venue." *LaCroix v. Am. Horse Show Ass'n*, 853 F. Supp. 992, 1000 (N.D. Ohio 1994) (citations omitted). "District courts have wide discretion in deciding motions to transfer." *Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).

The first inquiry is whether the proposed alternative venue is a district where the action may have been brought. *See* § 1404(a). This inquiry consists of three questions: (1) whether the proposed alternative court could exercise original jurisdiction over this case; (2) whether that court would have personal jurisdiction over the defendants; and (3) whether venue would be proper in that court. *See Zimmer Enters.*, 478 F. Supp. 2d at 990 (citations omitted).

Next, the Court must weigh case-specific factors, private factors, and public-interest factors. *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). Case-specific and private factors include, but are not limited to: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. *See Means v. United States Conf. of Cath.*

*Bishops*, 836 F.3d 643, 651-52 (6th Cir. 2016); *see also Audi AG v. Shokan Coachworks, Inc.*, No. 04-70626, 2007 U.S. Dist. LEXIS 10054, 2007 WL 522707, at *2 (E.D. Mich. Feb. 13, 2007) ("The Court may also consider any factor which may make any eventual trial easy, expeditious, and inexpensive.") (cited in *Means*) (citations omitted). The Court must also consider "public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citations omitted). The Court need not discuss each factor; it should focus its analysis on those factors that are particularly relevant. *Krawec v. Allegany Co-Op Ins. Co.*, No. 1:08-CV-2124, 2009 U.S. Dist. LEXIS 57792, 2009 WL 1974413, *4 (N.D. Ohio July 7, 2009).

### B. USG's § 1404(a) Motion to Transfer

Under the first inquiry, the Court must determine (1) whether the Northern District of Illinois could exercise original jurisdiction over this case; (2) whether the Northern District of Illinois would have personal jurisdiction over the defendant; and (3) whether venue would be proper in that court. See *Zimmer Enters.*, 478 F. Supp. 2d at 990 (citations omitted). The answer to all three of these questions is yes. The Northern District of Illinois would have jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Keene and KBP (residents of Ohio), and USG (resident of Illinois), and the amount in controversy exceeds $75,000. (Doc. 1 at ¶¶ 6-9.) The Northern District of Illinois would have personal jurisdiction over USG whose principal place of business is in Chicago, Illinois. (*Id.* at ¶ 8; *Daimler v. AG v. Bauman*, 571 U.S. 117, 137 (2014) (there is general jurisdiction over a corporation in its principal place of business).) And venue would be proper under 28 U.S.C. § 1391(b) because USG resides there and a substantial part of the events giving rise to the claims occurred there.

Next, the Court turns to case-specific factors. USG argues Keene and KBP assert the same misrepresentations against USG that Dependable asserts in the Illinois Action. (*See* Doc.

14 at 77-79; *compare* Illinois Action Doc. 44 at ¶¶ 6-7, 9-11, 13-19, 97, *with* Doc. 1 at ¶¶ 20, 22, 24-31, 51.)  The injury and damages stem from the same actions by USG related to the PLA and Settlement Agreement.  (*See* Doc. 14 at 79; *compare* Illinois Action Doc. 44 at ¶¶ 103, 115, *with* Doc. 1 at ¶¶ 44-46.)  And all the Keene Companies have the same ownership, the same representation, and the same source of documents.  (*See* Doc. 14-4 at 179; Doc. 14-5 at 191; Doc. 14-6 at 213, 216.)  To USG, these facts demonstrate this action is duplicative of the Illinois Action.  USG urges the convenience of the parties and witnesses favor transfer because allowing two actions, which involve the same factual and legal issues, to proceed in two district courts would mean the same parties would have to pay for two trials and the same witnesses would have to testify twice in two different locations.

In response, Keene and KBP argue this action and the Illinois Action are different because they involve different parties and involve Ohio law claims instead of Illinois law claims.  (Doc. 18 at 287-89.)  They further assert Plaintiffs' choice of forum should be given substantial weight, USG failed to provide specific evidence of inconvenience to witnesses, and the other case-specific factors would only shift the inconvenience from Defendant to Plaintiffs.  (*Id.* at 292-95.)

Although USG did not name specific witnesses, the Court finds this action and claims in the Illinois action stem from the same conduct by USG, and would involve duplicative discovery and witness testimony, and potentially two separate trials on overlapping issues.  *See U.S. ex rel. Kairos Scientia, Inc. v. Zinsser Co.*, No. 5:10-CV-383, 2011 U.S. Dist. LEXIS 3867, 2011 WL 127852, at *6 (N.D. Ohio Jan. 14, 2011) (assessing the convenience of the parties requires consideration of the expense of trial in a particular forum).  Accordingly, the Court finds the relevant case-specific factors weigh in favor of transfer.

Significantly, under public-interest considerations, USG urges the purpose of § 1404(a) is to avoid "the wastefulness of time, energy and money" that comes from having two cases involving the same issues simultaneously pending in different district courts. (Doc. 14 at 87-88 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).)

Plaintiffs do not respond to USG's public-interest arguments under *Cont'l Grain Co* or judicial economy. (Doc. 18 at 289-95.) Instead, they assert the interest of justice weighs against transfer because the Northern District of Illinois has a heavier caseload than the Northern District of Ohio, and Ohio courts have an interest in adjudicating Ohio-law disputes brought by Ohio-based plaintiffs. (Doc. 18 at 295.)

While Plaintiffs' choice of forum is a factor, it does "not outweigh the need to avoid duplicative, piecemeal, and parallel litigation, to conserve judicial resources, and to protect against inconsistent rulings on similar issues." *McConville v. Power Home Solar, LLC*, No. 5:22-cv-01277, 2023 U.S. Dist. LEXIS 125484, 2023 WL 4663045, at *6 (N.D. Ohio July 20, 2023). "[T]hat a related action is pending in the proposed transferee district is an important consideration that can override plaintiff's choice of forum" to promote judicial economy and avoid inconsistent results. *Republic Steel v. Beemac, Inc.*, No. 5:21-CV-00103, 2022 U.S. Dist. LEXIS 130030, 2022 WL 2872295, at *4 (N.D. Ohio July 21, 2022) (citations omitted). Plaintiffs also have not established the Ohio law claims in this action present novel or complex issues under Ohio law such that the district court in Illinois could not properly adjudicate them. *Id.* at *6 (citing *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991)). And Plaintiffs do not address the Illinois choice of law provisions in the PLA and Settlement Agreement, which are central to both this action and the Illinois Action. (*See* Doc. 14-1 at § 18; Doc. 14-2 at § 6.)

The Court finds the public-interest concern of judicial economy weighs strongly in favor of transfer. The Supreme Court has "made quite clear" § 1404(a) was designed to prevent the inefficiencies associated with duplicative litigation pending in different district courts. *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (citing *Cont'l Grain Co.*, 364 U.S. at 26.) Similarly, the Sixth Circuit has established, "Although there is no precise rule that, as between federal district courts, one court should defer to the other, the general principle is to avoid duplicative litigation." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996.)

Here, the most critical factor in favor of transfer is avoiding duplicative, parallel litigation in different district courts. *McConville*, 2023 WL 4663045, at *6; *Krawec*, 2009 WL 1974413, *6. The same business arrangements between affiliated entities at issue in this action have been before judges in the Northern District of Illinois since January 2022. And even with an almost three-year head start, the Illinois Action is still at the motion to dismiss stage. Transferring this action to the Northern District of Illinois ensures the efficient use of judicial resources and avoids duplicative or conflicting results.

### III.  CONCLUSION

For the reasons stated herein, Defendant's Motion to Transfer is GRANTED. Accordingly, the Court TRANSFERS this case under 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Illinois. All pending motions are properly left for resolution by the transferee court.

**IT IS SO ORDERED.**

**Date:**  April 22, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE